**Affirmed and Opinion filed July 8, 2021.**



**In The**

**Fourteenth Court of Appeals**

_____

**NO. 14-20-00026-CV**

_____

**SH SALON L.L.C., Appellant**

**V.**

**MIDTOWN MARKET MISSOURI CITY, TX, L.L.C., Appellee**

**On Appeal from the 434th Judicial District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 19-DCV-265077**

**OPINION**

In this appeal from an order granting a motion to dismiss, we consider two separate challenges to the applicability and enforceability of a forum-selection clause. For the reasons given below, we overrule both challenges and affirm the trial court's order.

**BACKGROUND**

This is a dispute between a landlord, Midtown Market Missouri City, TX, L.L.C. ("Midtown"), and its commercial tenant, SH Salon L.L.C. (the "Salon"). The

tenancy was located in a shopping center, and according to the Salon, Midtown failed to make the shopping center safe, which allegedly caused a decline in the Salon's business. For this and other reasons, the Salon filed an original petition against Midtown, seeking damages for negligence and violations of the DTPA. The Salon also sought declaratory relief relating to the balance owed under the lease, if any.

The Salon filed its original petition in Fort Bend County, Texas, which is also the location of the tenancy at issue. Midtown responded by filing a motion to dismiss, which invoked a forum-selection clause in the Salon's lease that mandated a venue in Monroe County, New York.

After a brief hearing, the trial court granted Midtown's motion to dismiss, and this appeal followed.

## APPLICABILITY CHALLENGE

We begin with the threshold question of whether the forum-selection clause applies to the Salon's claims. To the extent this question requires the interpretation of an unambiguous contract, our standard of review is de novo. *See Deep Water Slender Wells, Ltd. v. Shell Int'l Exploration & Prod., Inc.*, 234 S.W.3d 679, 687 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

The starting point in our inquiry is the language of the lease, which provides in material part as follows:

> Landlord and Tenant agree that this Lease shall be governed by and construed in accordance with the domestic laws of the State of New York without giving effect to any choice or conflict of law provision or rule (whether of the State of New York or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of New York. Landlord and Tenant further agree that any action, suit or proceeding arising out of or relating to this Lease, or the parties' relationship arising out of the Lease, shall be adjudicated exclusively in New York State Supreme Court, Monroe County, New

2

York, and the parties expressly, specifically, and irrevocably consent to the personal jurisdiction and venue of such court. Tenant further acknowledges that Tenant transacted business in New York State by entering into this Lease. In the event of an action, suit or proceeding arising out of or relating to this Lease, or the parties' relationship arising out of the Lease, Tenant waives all objections to venue on the grounds of forum non conveniens or for any other reason.

Even though the lease is governed by the laws of New York, the question of whether the Salon's claims should be dismissed based on the forum-selection clause is a matter governed by Texas law. *See In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 883 n.2 (Tex. 2010) (orig. proceeding) (per curiam). And under Texas law, we look at the factual allegations undergirding the claims when deciding whether the claims are encompassed by the forum-selection clause. *See Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 433 (Tex. 2017). This analysis requires a common-sense examination of the claims' substance, rather than their label. *Id.* at 437.

The Salon's negligence claim is based on Midtown's alleged failure to keep the shopping center "safe from crime and undesirable persons." The Salon alleges that disreputable men have begun to loiter outside the shopping center, which has deterred the Salon's base of female customers. The Salon also alleges that Midtown has failed to provide any sort of security personnel or security lighting. Though these allegations are labeled as a tort, they all arise out of the Salon's contractual relationship with Midtown. But for the commercial lease between these two parties, the claim would not exist. *Id.* at 437–38 (noting that the words "arising out of" have "broad significance" and connote a "but for" causal connection, which "literally embraces every event that hindsight can logically identify in the causative chain").

The Salon's DTPA claim focuses on several alleged misrepresentations, all of which focus on the landlord-tenant relationship between the two parties. Broadly speaking, the Salon alleges that Midtown falsely represented that the Salon could

use certain signage to advertise its business, that Midtown would promote the Salon and other businesses in the shopping center, and that Midtown would keep the shopping center well-lit and staffed with security. As with the Salon's negligence claim, all of these allegations arise out of the Salon's lease and would not exist but for that lease.

In its final claim for declaratory relief, the Salon requests the trial court "to declare the balance, if any, owed by the tenants under the contract." On its face, this claim plainly arises out of the lease.

The Salon summarily argues in its brief that the forum-selection clause should not apply because the Salon "is not seeking relief under the terms of the Lease." This argument misses the mark, as the relevant inquiry is whether the Salon's claims "aris[e] out of or relat[e] to this Lease, or the parties' relationship arising out of the Lease." For the reasons explained above, we conclude that all of the Salon's claims arise out of the lease. Therefore, the trial court correctly determined that the forum-selection clause applies to the Salon's claims.

## ENFORCEABILITY CHALLENGE

Forum-selection clauses are generally enforceable, and we presume that the clause here is valid. *See In re Laibe Corp.*, 307 S.W.3d 314, 316 (Tex. 2010) (orig. proceeding) (per curiam). As the opponent of that presumption, the Salon had the "heavy" burden of showing that (1) enforcement would be unreasonable or unjust, (2) the clause is invalid for reasons of fraud or overreaching, (3) enforcement would contravene a strong public policy of the forum where the suit was brought, or (4) the selected forum would be seriously inconvenient for trial. *Id.* By granting Midtown's motion to dismiss, the trial court implicitly determined that the Salon did not satisfy this burden. We review that determination for an abuse of discretion. *See In re Int'l*

4

*Profit Assocs., Inc.*, 274 S.W.3d 672, 675 (Tex. 2009) (orig. proceeding) (per curiam).

In the proceedings below, the Salon relied on the affidavit testimony of its majority owner, who asserted that Monroe County was a seriously inconvenient venue. The owner's testimony consisted of just two sentences: "All potential witnesses I could call to testify on my behalf concerning my claims work and live in Texas, predominantly Fort Bend County. Said witnesses consist of former fellow shop owners in the previously stated shopping center, or employees of these shop owners, all residents of Texas."

The trial court did not abuse its discretion by refusing to give this testimony more weight. When, as here, a party could have foreseen at the time of contracting the inconvenience of having to litigate a claim in a foreign forum, the party cannot escape the contract's forum-selection clause unless the party shows that "trial in the contractual forum will be so gravely difficult and inconvenient that [the party] will for all practice purposes be deprived of [its] day in court." *See In re AIU Ins. Co.*, 148 S.W.3d 109, 113 (Tex. 2004) (orig. proceeding). The mere fact that most of the Salon's witnesses reside in Texas does not establish as a matter of law that the Salon would be deprived of its day in court if the venue were moved to New York. *Id.* at 112 (rejecting an argument that a forum-selection clause was unenforceable where "many if not most potential witnesses" were in Texas while the chosen forum was in New York); *see also In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 234 (Tex. 2008) (orig. proceeding) (per curiam) ("If merely stating that financial and logistical difficulties will preclude litigation in another state suffices to avoid a forum-selection clause, the clauses are practically useless."). The Salon did not show or even argue that it would be precluded from taking depositions of Texas witnesses for presentation in a New York court. Based on the paucity of evidence presented,

we cannot say that the trial court abused its discretion by enforcing the forum-selection clause.

In another point, the Salon argues that the case should remain in Texas because both parties are Texas entities. But this point is refuted by the record. The Salon represented in its original petition that Midtown was a "foreign limited liability company." The Salon even produced evidence of a parallel lawsuit involving the same parties that was filed in Monroe County, and in that other lawsuit, Midtown represented that its principal place of business was in Rochester, New York, which is the seat of Monroe County.

In one final point, the Salon argues that enforcing the forum-selection clause would subvert the public policy of this state because the Salon has asserted a DTPA claim and the forum-selection clause does not comply with the DTPA's anti-waiver provision. *See* Tex. Bus. & Com. Code § 17.42(c) (requiring a waiver to be conspicuous, identified by a type of heading, and consistent with a particular form). The Salon has not cited to any authority in which a court has invalidated a forum-selection clause under the DTPA's anti-waiver provision. Nor are we aware of any such authority. To the contrary, our research shows that courts have enforced forum-selection clauses, despite a supposed noncompliance with the DTPA's anti-waiver provision. *See, e.g.*, *Hoskins v. Gulf Stream Coach, Inc.*, No. 14-11-00703-CV, 2012 WL 2394055, at *3–4 (Tex. App.—Houston [14th Dist.] June 26, 2012, no pet.) (mem. op.) (explaining that the DTPA's anti-waiver provision was never triggered); *CK DFW Partners Ltd. v. City Kitchens, Inc.*, No. 3:06-CV-1598-D, 2007 WL 2381259, at *7 (N.D. Tex. Aug. 17, 2007) ("Contract provisions directing that suit be filed in California and that the laws of California are applied do not constitute an impermissible waiver of rights in violation of public policy under § 17.42 of the DTPA.").

The Fifth Circuit has given the following explanation for refusing to apply the DTPA's anti-waiver provision in the manner proposed by the Salon:

> It defies reason to suggest that a plaintiff may circumvent forum selection and arbitration clauses merely by stating claims under laws not recognized by the forum selected in the agreement. A plaintiff simply would have to allege violations of his [state's] tort law or his [state's] statutory law or his [state's] property law in order to render nugatory any forum selection clause that implicitly or explicitly required the application of the law of another jurisdiction. We refuse to allow a party's solemn promise to be defeated by artful pleading.

*Haynsworth v. The Corporation*, 121 F.3d 956, 969 (5th Cir. 1997). This reasoning comports with the decisions of the Texas Supreme Court, which recognize that forum-selection clauses should not be avoided by artful pleading, *see Pinto Tech. Ventures*, 526 S.W.3d at 437, and also that DTPA claims are subject to arbitration (a type of forum selection) despite the DTPA's anti-waiver provision. *See Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 270–71 (Tex. 1992). Accordingly, we overrule this final point. *See Tau Kappa Epsilon v. USA Bus Charter, Inc.*, No. 03-10-00768-CV, 2011 WL 3250598, at *7 (Tex. App.—Austin July 28, 2011, pet. denied) (mem. op.) (rejecting an argument that the enforcement of a forum-selection clause would subvert the public policy of litigating DTPA claims in Texas).

## CONCLUSION

The trial court's order granting the motion to dismiss is affirmed.


/s/      Tracy Christopher
          Chief Justice


Panel consists of Chief Justice Christopher and Justices Wise and Hassan.