**Opinion issued March 9, 2023**



In The

# Court of Appeals

### For The

# First District of Texas

———————————

### NO. 01-21-00492-CV

———————————

## MICHAEL NAGATA, JACK VAN VLEIT, AND JAMES (PAT) EDGAR, Appellants

### V.

## MHWIRTH INC., Appellee

---

### On Appeal from the 157th District Court
### Harris County, Texas
### Trial Court Case No. 2021-14261

---

### MEMORANDUM OPINION

In this interlocutory appeal, appellants Michael Nagata, Jack Van Vleit, and James (Pat) Edgar (collectively, appellants), appeal from the trial court's order denying their motions to abate the case. Nagata and Edgar also appeal from the trial court's order denying their special appearances. Because we conclude that we do not

have jurisdiction over an appeal from the denial of a motion to abate, we dismiss appellants' appeal to the extent they purport to do so. We further affirm the trial court's denial of Nagata's and Edgar's special appearances.

## Background

In March 2018, appellee MHWirth Inc. and Gulf Coast Brake & Motor, Inc. (Gulf Coast)[1] entered into a written contract entitled "Stock Parts and Intellectual Property Sale Agreement" (Agreement) concerning the sale of brake parts and intellectual property associated with Eddy Current Brakes (ECB) owned by MHWirth. MHWirth is an original equipment manufacturer for deepwater drilling rigs, semisubmersible drill ships, and drilling packages offshore. Gulf Coast is an industrial service company providing several services for electro-magnetic brake systems used on rigs in the oil and gas drilling industry. Nagata, Van Vleit, and Edgar are principal officers of Gulf Coast. The ECB is a draw works auxiliary brake employed in the drilling industry and used in oil and gas operations that is "designed

---

[1]     Gulf Coast also filed an appeal from the trial court's denial of its motion to abate. On July 15, 2022, after briefing was filed by all parties, Gulf Coast filed a "Suggestion of Bankruptcy and Notice of Automatic Stay," notifying this Court that on July 14, 2022, Gulf Coast filed a bankruptcy case under Chapter 11 of the United States Bankruptcy Code in the United States District Court for the Western District of Louisiana, Lafayette Division. On July 26, 2022, the Court abated this appeal pending resolution of Gulf Coast's bankruptcy proceedings. *See* TEX. R. APP. P. 8.2. Upon receipt of MHWirth's motion to sever Gulf Coast's appeal from the remaining appellants' appeal , this Court granted the motion to sever Gulf Coast from this appeal and reinstated the appeal on this Court's active docket. *See id.* 8.3(b).

to slow the hook load when energized with DC voltage." The negotiated price in the Agreement for the parts and intellectual property was $500,000.

As part of the Agreement, appellants Nagata, Van Vleit, and Edgar signed as personal guarantors, explicitly agreeing to be "jointly and severally liable for the fulfilment by Buyer [Gulf Coast] of its payment obligations under this Agreement, as if they were the principal obligor." They also agreed to "guarantee to Seller [MHWirth] the payment of all amounts payable by [Gulf Coast] under this Agreement and undertake to ensure that [Gulf Coast] will perform when due all its obligations under this Agreement." Section 10.7 of the Agreement sets forth the parties' agreement regarding the governing law:

> 10.7 **Governing Law.** This Agreement shall be governed by the law of the State of Texas, USA without regard to its conflicts-of-laws rules or principles. The parties consent to personal jurisdiction in any action brought in any court, federal or state, within the State of Texas, having subject matter jurisdiction arising under this Agreement . . . .

Appellants initialed each page of the Agreement, not just the section containing the personal guarantee, and signed the Agreement as "Personal Guarantors," with their signatures appearing just below the statement "the parties hereto hereby execute this Agreement" and the signature lines for Gulf Coast and MHWirth.

3

IN WITNESS WHEREOF, the parties hereto do hereby execute this Agreement in several counterparts, each of which shall be considered as an original, effective as of the date first hereinabove written.

**MHWirth Inc.**

Signed: _____

Name: _Ogis Mersner_

Title: _VP Sales_

**Gulf Coast Brake & Motor, Incorporated Inc.**

Signed: _____

Name: _____

Title: _____

**PERSONAL GUARANTORS:**

GUARANTOR #1

Signed: _____

GUARANTOR #2

Signed: _____

GUARANTOR #3

Signed: _____

According to MHWirth's petition, following the execution of the Agreement, Gulf Coast took possession of the ECB parts in Houston, Texas and brought those parts to its facility in Louisiana. Gulf Coast made two installment payments required under the Agreement, totaling $150,000, but thereafter refused the additional required installment payments to MHWirth. MHWirth alleged that on June 21, 2019, Gulf Coast informed it that "due to the downturn of the industry and the fact that we have not received any of the expected orders from MHWirth," Gulf Coast was unable to continue making payments. Thus, MHWirth alleged that Gulf Coast was responsible for the remaining balance of the original amount of the Agreement—$350,000—in addition to late fees and delay charges permitted under Section 5.3 of

4

the Agreement. Accordingly, on March 11, 2021, MHWirth sued Gulf Coast, along with appellants based on their personal guarantees, for breach of contract.

In its petition, MHWirth alleged that the trial court had personal jurisdiction over Gulf Coast and appellants pursuant to Section 10.7 of the Agreement because "the parties consented to . . . personal jurisdiction in any action brought within the State of Texas."

Appellants Nagata and Edgar, who reside in Louisiana, filed special appearances challenging the trial court's personal jurisdiction over them.[2] Nagata and Edgar alleged that they did not enter into any contract with MHWirth and that to the extent there was a valid contract, the personal guarantee section of the Agreement only obligated them to guarantee Gulf Coast's payment obligations under the Agreement, and did not incorporate the forum selection clause which they contend is applicable only to Gulf Coast.

Additionally, all the appellants moved to abate the case, arguing that before MHWirth filed the underlying suit in Texas, Gulf Coast had filed a suit against MHWirth in Louisiana involving "identical claims," including breach of contract, fraud, misrepresentation, and damages. Because the "identical contractual dispute regarding the identical basis and facts" was already pending in another forum,

---

[2] Neither Van Vleit, who resides in Texas, nor Gulf Coast, filed a special appearance.

5

appellants requested that the trial court abate the second lawsuit, i.e., the underlying case, filed by MHWirth.

In one order, the trial court denied Nagata's and Edgar's special appearances and denied the appellants' motions to abate. Appellants filed their notice of appeal citing to Texas Civil Practice and Remedies Code Section 51.014(a)(7), permitting an interlocutory appeal from the denial of a special appearance, as the basis for this Court's jurisdiction. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(7).

## Motion to Abate

In their first issue, appellants argue that the trial court erred in denying appellants' motions to abate in favor of the first-filed Louisiana case given the well-established rules on state-to-state comity. In response, MHWirth argues that we should dismiss appellants' appeal from the denial of the motions to abate because neither Section 51.014 nor any other statute authorizes an interlocutory appeal from the denial of a motion to abate. Because this raises a jurisdictional question, we address it first.

This Court generally has jurisdiction only over appeals from final judgments and specific interlocutory orders that the legislature has designated as appealable orders. *See CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011); *see also* TEX. CIV. PRAC. & REM. CODE § 51.014; *Walker Sand, Inc. v. Baytown Asphalt Materials, Ltd.*, 95 S.W.3d 511, 514 (Tex. App.—Houston [1st Dist.] 2002, no pet.) ("Appellate

courts have jurisdiction to consider immediate appeals of interlocutory orders only if a statute explicitly provides appellate jurisdiction."). We strictly apply such statutes permitting interlocutory appeals "because they are a narrow exception to the general rule that interlocutory orders are not immediately appealable." *CMH Homes*, 340 S.W.3d at 447; *Walker Sand*, 95 S.W.3d at 514.

Where only a portion of an order qualifies for interlocutory review, we generally cannot exercise jurisdiction over other portions of the order. *See Schlumberger Ltd. v. Rutherford*, 472 S.W.3d 881, 891 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (dismissing appeal from partial grant of TCPA motion to dismiss and concluding that "denial of a [TCPA] motion to dismiss does not provide an avenue of interlocutory appeal to all other ancillary rulings contained within the same written 'interlocutory order'"); *see also Five Star Glob., LLC v. Hulme*, No. 05-20-00940-CV, 2021 WL 3159792, at *2 (Tex. App.—Dallas July 26, 2021, no pet.) (mem. op.) (considering interlocutory appeal to extent it challenged appointment of receiver but dismissing remainder of appeal because appellate court lacked jurisdiction to review trial court's order to extent it appointed person to act as auditor or master); *Waite v. Waite*, 64 S.W.3d 217, 224 n.6 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ("When a litigant challenges both appealable and unappealable interlocutory orders, we review the portion of an order which is appealable and refuse to consider the portion which is not-appealable." (internal

7

citation and quotation omitted)); *but see Dallas Symphony Ass'n, Inc. v. Reyes*, 571 S.W.3d 753, 760–61 & n.36 (Tex. 2019) (neither approving nor disapproving of courts of appeals' reasoning but noting at least one exception where Section 51.014's text specifically authorizes appeal from order denying motion based "in whole or in part" on appealable ground).

Section 51.014(a)(7) authorizes an interlocutory appeal from an order that "grants or denies the special appearance of a defendant under Rule 120a, Texas Rules of Civil Procedure[.]" TEX. CIV. PRAC. & REM. CODE § 51.014(a)(7). Thus, we have jurisdiction to review the trial court's order to the extent that it denied Nagata's and Edgar's special appearances. However, Section 51.014 does not extend this Court's jurisdiction over the trial court's denial of appellants' motions to abate. Neither Section 51.014 nor any other statute provides for an interlocutory appeal from an order denying a motion to stay or abate the trial court's proceedings. *Id.*; *Walker Sand*, 95 S.W.3d at 516 (holding interlocutory appeal from order denying motion to abate was not authorized by statute and therefore appellate court lacked jurisdiction to consider appeal); *see also Progressive Cnty. Mut. Ins. Co. v. Anderson*, No. 05-10-00103-CV, 2010 WL 716426, at *1 (Tex. App.—Dallas Mar. 3, 2010, no pet.) (mem. op.) ("An order denying a motion to sever and abate is neither (1) a final judgment or (2) an interlocutory order for which an appeal is authorized by statute. Thus, it is not appealable."); *Bennett v. Leas*, No. 13-04-362-

CV, 2005 WL 608289, at *1 (Tex. App.—Corpus Christi–Edinburg Mar. 17, 2005, pet. denied) (mem. op.) (per curiam) (dismissing appeal for want of jurisdiction because "[a]n order of abatement is not an authorized interlocutory appeal"); *Lamar Cnty. Elec. Coop. Ass'n v. Rayburn Country Elec. Coop., Inc.*, No. 08-01-00238-CV, 2004 WL 241529, at *2 (Tex. App.—El Paso Feb. 10, 2004, no pet.) (mem. op.) (rejecting argument that trial court erred in refusing to abate due to previously filed case and holding that "review of such an order was not subject to interlocutory appeal under the Civil Practice and Remedies Code and that such an order was generally reviewed only on appeal from the final judgment"); *cf. Peters v. Blockbuster, Inc.*, 65 S.W.3d 295, 309 (Tex. App.—Beaumont 2001, no pet.) (holding that issues related to abatement of case in deference to previously filed class action pending in another state were not reviewable by interlocutory appeal because trial court did not issue injunction or other appealable order).

Because appellants challenge two interlocutory rulings, only one of which is appealable by statute, "the proper course is to dismiss that portion which is non-appealable, and to rule on the portion from which an appeal may be taken." *Bobbitt v. Cantu*, 992 S.W.2d 709, 712 (Tex. App.—Austin 1999, no pet.); *see also Five Star Glob.*, 2021 WL 3159792, at *2; *Schlumberger*, 472 S.W.3d at 891; *Waite*, 64 S.W.3d at 224 n.6. Accordingly, because an interlocutory appeal is not authorized

9

from the denial of a motion to abate, we dismiss that portion of appellants' appeal for lack of jurisdiction.

## Special Appearance

In their second issue, Nagata and Edgar argue that the trial court erred in denying their special appearances. In support, they contend that MHWirth's reliance on the consent-to-jurisdiction provision in Section 10.7 of the Agreement is misplaced because neither Nagata nor Edgar were expressly made parties to the Agreement.

### A.      Standard of Review

Special appearances are governed by Texas Rule of Civil Procedure 120a, which provides that "a special appearance may be made by any party . . . for the purpose of objecting to the jurisdiction of the court over the person or property of the defendant on the ground that such party or property is not amenable to process by the courts of this State." TEX. R. CIV. P. 120a.

On appeal we review de novo the trial court's determination to grant or deny a special appearance. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). A plaintiff bears the initial burden of pleading sufficient allegations to establish personal jurisdiction over a defendant. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex. 2002). However, when a nonresident defendant challenges jurisdiction through a special appearance, the defendant must

negate all grounds for personal jurisdiction alleged by the plaintiff in order to prevail. *See id.* We review all evidence in the record to determine if the nonresident defendant negated all possible grounds. *N803RA, Inc. v. Hammer*, 11 S.W.3d 363, 366 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (citing *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex. 1985)).

When reviewing a trial court's order denying a special appearance, we review the court's findings of fact for legal and factual sufficiency and its conclusions of law de novo. *BMC Software*, 83 S.W.3d at 794. Absent issuance of findings of fact and conclusions of law, as here, all facts necessary to support the order and supported by the evidence are implied. *Id.* at 795.

Two requirements must be met before a Texas court can exercise personal jurisdiction over a nonresident defendant. First, the Texas long-arm statute must authorize the exercise of jurisdiction, and second, the exercise of jurisdiction must be consistent with the guarantees of due process. *Coleman*, 83 S.W.3d at 806; *Tri-State Bldg. Specialties, Inc. v. NCI Bldg. Sys., L.P.*, 184 S.W.3d 242, 248 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

With respect to personal jurisdiction, federal due process requires two things. First, the nonresident defendant must have purposefully established such minimum contacts with the forum state that the defendant could reasonably anticipate being sued there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985). Second,

if the nonresident defendant has purposefully established minimum contacts with the forum, the exercise of personal jurisdiction must also comport with traditional notions of fair play and substantial justice. *Id.* at 476. Only in rare cases, however, will a Texas court's exercise of personal jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state. *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991).

**B.      Consent to Jurisdiction**

Personal jurisdiction is a waivable right and a party can expressly or implicitly consent to personal jurisdiction through a forum selection clause or a consent-to-jurisdiction clause. *Burger King*, 471 U.S. at 472 n.14; *Abacan Tech. Servs. Ltd. v. Glob. Marine Int'l Servs. Corp.*, 994 S.W.2d 839, 843 (Tex. App.—Houston [1st Dist.] 1999, no pet.). When parties freely enter into agreements with forum selection clauses, the clause is prima facie valid and enforceable unless the opponent establishes a compelling reason not to enforce it. *See M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972). Enforcement of a forum selection clause is mandatory absent a showing that "enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *In re Automated Collection Techs., Inc.*, 156 S.W.3d 557, 559 (Tex. 2004) (orig. proceeding) (per curiam) (quoting *In re AIU Ins. Co.*, 148 S.W.3d 109, 112 (Tex.

12

2004)). The party challenging the forum selection clause bears a "heavy burden of proof." *M/S Bremen*, 407 U.S. at 17.

The forum selection clause, or consent-to-jurisdiction clause, contained in Section 10.7 of the Agreement at issue here, provides: "The parties consent to personal jurisdiction in any action brought in any court, federal or state, within the State of Texas, having subject matter jurisdiction over this Agreement."

## C. Application

Nagata and Edgar contend that Section 10.7 does not apply to them because they were not explicitly made "parties" to the Agreement. Rather, they argue, the language of the Agreement, including numerous references to "either party" or "the other party," indicates that it was entered into only between Gulf Coast and MHWirth such that Section 10.7 applies only to those two entities. We disagree.

"Forum-selection clauses are creatures of contract" and interpreted under traditional contract principles. *Rieder v. Woods*, 603 S.W.3d 86, 94 (Tex. 2020) (quoting *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 443 (Tex. 2017)). Courts strive to give effect to the parties' intent as expressed in the language they chose. *Id.* "Contract terms cannot be viewed in isolation, however, because doing so distorts meaning." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 889 (Tex. 2019). Accordingly, courts must examine the contract as a whole to harmonize and give effect to all of its provisions so that none are rendered

meaningless. *Id.*; *Pinto Tech. Ventures*, 526 S.W.3d at 443 (quoting *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005)). We give the contract's terms their plain, ordinary, and generally accepted meanings unless the contract itself shows that they were used in a technical or different sense. *Pathfinder Oil*, 574 S.W.3d at 889; *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015); *Valence Operating*, 164 S.W.3d at 662.

Here, the clause at issue states: "The parties consent to personal jurisdiction in any action brought in any court, federal or state, within the State of Texas, having subject matter jurisdiction over this Agreement." The Agreement does not define "party" or "parties." Therefore, we apply the plain meaning of "party." Black's Law Dictionary defines "party" as "[s]omeone who takes part in a transaction." *Party*, BLACK'S LAW DICTIONARY (11th ed. 2019). The transaction here was the sale of the parts and equipment from MHWirth to Gulf Coast, as memorialized in the Agreement, which included the personal guaranty of Nagata and Edgar.

Furthermore, the last page of the Agreement states: "IN WITNESS WHEREOF, the parties hereto do hereby execute this Agreement in several counterparts, each of which shall be considered as an original, effective as of the date first hereinabove written." Immediately below this phrase are the signature blocks for MHWirth, Gulf Coast, *and* each of the three guarantors. Thus, the plain language of the Agreement indicates that the parties to the Agreement are those who

14

execute, i.e., sign, the Agreement. *See Execute*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining execute as "[t]o make (a legal document) valid by signing"). MHWirth, Gulf Coast, and each of the three guarantors executed the Agreement. Thus, they are all "parties" to the Agreement. Although we recognize that the Agreement includes certain provisions that refer to "either party" or "other party," this inartful drafting does not make the Agreement ambiguous or subject to more than one reasonable interpretation, especially when reading the Agreement as a whole, as we must. *See Pathfinder Oil*, 574 S.W.3d at 889; *Pinto Tech. Ventures*, 526 S.W.3d at 443; *Valence Operating*, 164 S.W.3d at 662; *see also Guggenheim Corp. Funding, LLC v. Valerus Compression Servs., L.P.*, 465 S.W.3d 673, 681 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) ("Likewise, lack of clarity or even inartful drafting will not alone render an agreement ambiguous." (citing *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006)).

Viewing the Agreement as a whole, as we must, demonstrates that each of the three guarantors initialed every page of the Agreement, not just the page containing the guaranty provisions, and that their initials appeared under the initials for representatives of MHWirth and Gulf Coast.

Moreover, Section 6.2 of the Agreement states:

Specifically GUARANTORS, on an irrevocable and unconditional basis, expressly waiving the benefits of division and discussion and order, guarantee to [MHWirth] the payment of all amounts payable by [Gulf Coast] under this Agreement *and undertake to ensure that [Gulf*

15

*Coast] will perform when due all its obligations under this Agreement.* (Emphasis added).

Thus, it is clear under the language of this provision that Nagata and Edgar, as guarantors, unconditionally guaranteed not only the "payment of all amounts payable by [Gulf Coast] under th[e] Agreement," but also the performance of "all [of Gulf Coast's] obligations under th[e] Agreement."

This Court considered a similar situation in *Halabu v. Petroleum Wholesale, L.P.*, No. 01-07-00614-CV, 2008 WL 2186466 (Tex. App.—Houston [1st Dist.] May 22, 2008, no pet.) (mem. op.). There, Petroleum and USA Travel entered into a "Fuel Marketing Location Agreement" (FMLA) whereby Petroleum agreed to sell motor fuels to USA Travel delivered to its place of business in Amarillo, Texas. *Id.* at *1. The FMLA contained a provision that stated that the agreement "shall be construed under and in accordance with the laws of the State of Texas, and all obligations of the parties created hereunder are performable in Harris County, Texas." *Id.* The bottom of each page of the FMLA was initialed "SH" and page eleven of the agreement, entitled "GUARANTEE," contained a personal guarantee of payment and performance of the FMLA. It was signed, with the signature block reading "SHAMIL HALABU." *Id.* Petroleum sued Halabu for breach of contract, alleging that he had personally guaranteed the contract between Petroleum and USA Travel Center, and premising jurisdiction on the forum selection clause in the FMLA. *Id.* at *3. Halabu filed a special appearance in the trial court, asserting that

16

it lacked personal jurisdiction over him because the guarantee was not part of the FMLA and denying that he had signed the guarantee. *Id.* Based on the evidence before the trial court, which included the original signed FMLA that included the forum selection clause, and "SH" initials on each page, as well as the signed guarantee agreement guaranteeing "payment and performance of the FMLA," this Court affirmed the trial court's denial of Halabu's special appearance concluding that the evidence supported the trial court's implied finding that Halabu consented to jurisdiction in Texas. *Id.* at *1, 3.

In a similar context involving similar language in a guaranty agreement, the Amarillo Court of Appeals concluded that the guarantors consented to jurisdiction in Lubbock County, Texas and, therefore, the trial court correctly denied the guarantors' special appearances. *See Initiatives Healthcare, Inc. v. DivLend Equip. Leasing, LLC*, No. 07-12-00480-CV, 2013 WL 9541476, at *4–5 (Tex. App.—Amarillo Oct. 31, 2013, no pet.) (mem. op.). In *Initiatives Healthcare*, DivLend Equipment Leasing, LLC (DivLend) entered into a lease agreement with Healthcare of Florence, LLC (Healthcare of Florence), located in Arizona, to lease medical and hospital equipment. *Id.* at *1. The equipment lease between DivLend and Healthcare of Florence contained a forum selection clause, or consent-to-jurisdiction clause, providing that any suit between the parties would be heard in Lubbock County, Texas. *Id.* at *2. DivLend conditioned the execution of the lease agreement on the

17

execution of certain limited and unlimited guaranty agreements. *Id.* Each guaranty agreement "absolutely and unconditionally guarant[eed] to [DivLend] the prompt payment in full when due of all payments of rent and all other amounts payable by the Lessee to the Lessor and the performance by the Lessee of all of the Lessee's other obligations under the Lease." *Id.* After Healthcare of Florence allegedly breached the lease, DivLend sought to enforce the guaranty agreements in Texas. *Id.* The guarantors filed special appearances, to which DivLend responded that the guarantors voluntarily consented to jurisdiction in Lubbock County under the terms of the lease. *Id.* at *3. The guarantors, in contrast, argued that the consent-to jurisdiction clause in the lease agreement was ineffective as a waiver of the right to object to personal jurisdiction in a suit based on the guaranty agreements. *Id.* The trial court denied the guarantors' special appearances. *Id.* at *1.

The Court of Appeals affirmed. In affirming, the court found the following significant:

- the lease agreement and guaranty agreements were executed contemporaneously;

- the guaranty agreements expressly referenced the lease agreement;

- the lease agreement contained an express clause governing the parties' choice of law as well as the forum for dispute resolution—Lubbock County, Texas; and

- Healthcare of Florence signed the lease agreement and "each guarantor guaranteed prompt payment to DivLend in the event of default and

18

performance of all of [Healthcare of Florence's] other obligations under the Lease."

*Id.* at *4. Accordingly, the court held that the record supported the trial court's implied finding that each guarantor consented to jurisdiction in Lubbock County, Texas. *Id.* at *5. In a concurring opinion, Chief Justice Quinn noted, as the majority did, that each guaranty included a passage whereby the guarantor agreed to guarantee the payment of "rent and all other amounts payable . . ." as well as the "performance by the Lessee of all of the Lessee's other obligations under the Lease." *Id.* at *5 (Quinn, J., concurring). "Agreeing within the lease to adjudicate all claims in Texas is no less of an 'obligation' imposed on the lessee than the obligation to pay rent for the items leased. Consequently, the guarantors were also bound to perform that obligation." *Id.*

Here, the Agreement and the guarantees were not simply executed contemporaneously—the guarantees were contained in the Agreement itself. And Nagata and Edgar initialed each page of the Agreement, including the page containing Section 10.7, and executed the Agreement as "parties." Like *Halabu* and *Initiatives Healthcare*, the Agreement contained an express clause consenting to the personal jurisdiction of Texas courts. Sections 6.1 and 6.2 explicitly reference "this Agreement" and Gulf Coast's obligations thereunder. Perhaps most importantly, in Section 6.2 Nagata and Edgar guaranteed not just the "payment of all amounts payable by [Gulf Coast] under this Agreement," but also the performance of "all [of

Gulf Coast's] obligations under this Agreement," which would include the consent to jurisdiction in Texas. *See Initiatives Healthcare*, 2013 WL 9541476, at *4; *Halabu*, 2008 WL 2186466, at *1, 3.

Based on the above, including the presence of Nagata's and Edgar's initials on each page of the Agreement, the incorporation of the guaranty into the Agreement itself, Nagata's and Edgar's signatures as "parties" at the conclusion of the Agreement, and Nagata's and Edgar's unconditional guarantee of not just the "payment of all amounts payable by [Gulf Coast] under this Agreement," but also the performance of "all [of Gulf Coast's] obligations under this Agreement," we hold that the evidence supports the trial court's implied finding that Nagata and Edgar consented to personal jurisdiction in Texas. *See Initiatives Healthcare*, 2013 WL 9541476, at *4; *Halabu*, 2008 WL 2186466, at *1, 3.

Finally, Nagata and Edgar argue that even if the forum selection clause applied to them, enforcement of it would offend due process or be unreasonable and unjust because the case should be abated in favor of the first-filed Louisiana case. *See M/S Bremen*, 407 U.S. at 10 (forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances"). However, a court must enforce the forum selection clause unless the resisting party makes a "strong showing" that: (1) its enforcement would be unreasonable and unjust; (2) the clause was the product of

20

fraud or overreaching; (3) enforcement would contravene the strong public policy of the forum where the suit was filed; or (4) trial in the chosen forum would be seriously inconvenient. *See id.* at 15–16; *Rieder*, 603 S.W.3d at 93.

Edgar and Nagata failed to carry their burden to demonstrate that the forum selection clause should not be enforced. Although they contend that forcing them to defend themselves in Texas would be unreasonable and unjust because this case should have been abated in favor of the Louisiana case, the evidence submitted in connection with their special appearances indicates that they are not parties to the Louisiana action, only Gulf Coast and MHWirth are parties. Further, even if they were parties, the fact that two lawsuits might result from the application of a forum selection clause does not meet the standard for avoiding the forum selection provision. *See In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 680 (Tex. 2009) (orig. proceeding) (per curiam) ("Next, assuming Tropicpak's argument that if the clauses are enforced, it will have to pursue two suits—one against IPA in Illinois and one against Salinas in Texas—is correct, that is not the type of unusual and special circumstances that show litigating in the contracted-for forum will be so gravely difficult and inconvenient Tropicpak will be deprived of its day in court."); *In re FC Stone, LLC*, 348 S.W.3d 548, 552 (Tex. App.—Dallas 2011, orig. proceeding) ("However, the fact that Williams might have to pursue two lawsuits—one in Illinois

21

and one in Texas—does not meet the standard for avoiding the forum-selection provision.").

Because the evidence supports the trial court's implied finding that Nagata and Edgar consented to personal jurisdiction in Texas, and they have failed to show that the forum selection clause should not be enforced, we conclude that the trial court did not err in denying their special appearances.

We overrule Nagata and Edgar's second issue.

## Conclusion

We dismiss for lack of jurisdiction appellants Michael Nagata, Jack Van Vleit, and James Edgar's appeal from the trial court's order to the extent it denies their motions to abate. We affirm the trial court's order to the extent it denies Nagata's and Edgar's special appearances.

Amparo Guerra
Justice

Panel consists of Justices Landau, Countiss, and Guerra.

22