

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00296-CV

_____

TELCON SERVICES, LLC, Appellant

V.

PRIMORIS T & D SERVICES, LLC, Appellee

On Appeal from the 348th District Court
Tarrant County, Texas
Trial Court No. 348-342450-23

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

Appellee Primoris T&D Services, LLC sued out-of-state Appellant Telcon Services, LLC, for misrepresentation-based torts concerning a fiber-optic infrastructure project in Maryland and Virginia. Telcon filed a special appearance, asserting that its contacts with Texas were insufficient to establish specific personal jurisdiction over Telcon. The trial court denied Telcon's special appearance.

But Primoris's evidence was legally insufficient to demonstrate that Telcon had purposefully availed itself of Texas. Telcon's registering to do business in Texas and having two Texas employees, who were unconnected to the infrastructure project at issue, did not establish specific jurisdiction. Additionally, Primoris did not demonstrate a connection between Primoris's third-party tort claims against Telcon and either (1) Telcon's one in-Texas meeting with Primoris or (2) Telcon's contracts, work, and communications with other Texas entities. Finally, Primoris's evidence of phone, email, and other remote communications between Telcon and Primoris's Texas-based employees were not minimum contacts with Texas sufficient to support specific personal jurisdiction over Primoris's tort claims against Telcon. Accordingly, we sustain Telcon's sole issue and reverse the trial court's order denying its special appearance.

## I. Background Facts and Procedural History

Telcon is a limited liability company formed under the laws of Idaho, where Telcon maintains its principal place of business. QLoop[1] contracted with Telcon in 2021 to manage its fiber-optic infrastructure projects.

In 2022, Primoris (headquartered in Dallas, Texas) signed a Master Agreement for Construction with QLoop to be the general contractor for QLoop's fiber-optic infrastructure projects. One project, known as Project Sage, involved laying fiber-optic cable in Maryland and Virginia. For some of Project Sage's directional-boring work, Primoris subcontracted with Legend Directional Services, LLC (headquartered in Weatherford, Texas).

During Legend's work on Project Sage, a dispute arose with Maryland landowners, preventing Legend from accessing its equipment and land needed for a jobsite and causing a work stoppage while a written access agreement was negotiated with the landowners. Legend later sued Primoris for breach of contract, claiming the work stoppage caused it over $5.5 million in damages.

Primoris denied any responsibility for Legend's alleged damages and filed third-party claims against QLoop and Telcon. Primoris alleged that Telcon was the engineer on Project Sage and that Telcon and QLoop were responsible for not obtaining the

---

[1]QLoop, LLC is a foreign limited liability company with its principal place of business in Austin, Texas. QLoop, LLC's wholly-owned affiliate QLoop Communications Services, LLC is a foreign limited liability company with its principal place of business in Maryland. We collectively refer to both entities as QLoop.

necessary land-access agreements to prevent the work stoppage. Primoris sued QLoop for breach of contract and sued both QLoop and Telcon for fraudulent misrepresentation, fraud by nondisclosure, negligent misrepresentation, and promissory estoppel.

Telcon filed a special appearance, asserting that the trial court did not have personal jurisdiction because Primoris could not establish that Telcon had sufficient minimum contacts with Texas. Telcon maintained that Primoris's claims were based on alleged conduct and statements occurring outside of Texas. Telcon specifically pointed out that it did not have a contract with Primoris and could not be considered a third-party beneficiary of the Master Agreement.

Primoris responded that because its claims against Telcon related to Telcon's purposeful, substantial, ongoing contacts with Texas, Telcon was subject to the trial court's jurisdiction. Primoris made the following jurisdictional allegations:

- Telcon is a company registered to do business in Texas, with at least two employees in Texas;

- Although Telcon is not a party to the Master Agreement, Telcon entered another contract for a multi-million-dollar project with QLoop that contained a Texas-venue provision and created the relationship to manage Project Sage;

- Telcon created a Specifications and Scope of Work (which memorialized Telcon's obligations to obtain access agreements);

- Telcon managed bids for Project Sage;

- Telcon negotiated with Primoris regarding its bid;

4

- Telcon representatives traveled to Texas to meet with Primoris before Primoris signed the Master Agreement;

- Telcon agreed to be QLoop's representative in the Master Agreement, which was related to Project Sage and contained a Texas-venue provision;

- Telcon managed the ongoing relationship between Texas entities QLoop and Primoris under the Master Agreement;

- Telcon managed Primoris's payment requests under the Master Agreement; and

- Telcon made hundreds, if not thousands, of communications (emails, phone calls, and daily meetings) with Texas entities (QLoop and Primoris) and their employees regarding the Master Agreement, including the representations that Primoris alleged caused the harm at issue.

Primoris also alleged that Telcon was subject to the trial court's jurisdiction as a nonsignatory bound by the forum-selection clause in the Master Agreement. The parties filed competing unsworn declarations, and their attached evidence showed the following contracts:

| Quantum Loophole, LLC–InfraPartners, LLC | Ameredev Operating, LLC–Telcon | QLoop–Primoris | Primoris– Legend |
|---|---|---|---|
| Professional Services Agreement | Master Service Agreement | Master Agreement for Construction | Signed Proposal for Requested Services |
| Jan. 11, 2021 | Mar. 10, 2021 | July 1, 2022 | Nov. 11, 2022 |
| Infrastructure planning, engineering, procurement & construction management | Telcon as contractor for Ameredev projects | Regarding work on Project Sage in Virginia and Maryland | For drilling work in Maryland |
| Texas forum-selection clause | Texas forum-selection clause | Texas forum-selection clause | |
| Telcon and Primoris NOT signatories | Primoris NOT a signatory | Telcon NOT a signatory | Telcon NOT a signatory |
| | | NO third-party beneficiaries | |

After considering the evidence before it, the trial court denied Telcon's special appearance. Telcon appealed but did not request findings of fact or conclusions of law.

## II. Discussion

In a single issue, Telcon argues that the trial court erred by denying its special appearance because (1) Telcon lacked sufficient contacts with Texas to support the

exercise of either general or specific personal jurisdiction and (2) Telcon was not bound by the forum-selection clause in the contract between Primoris and QLoop. Based on the standard of review, the applicable law, and the parties' shifting burdens of proof, we conclude that the trial court erred by denying Telcon's special appearance.

## A. Standard of review and applicable law

Because a trial court's authority to exercise personal jurisdiction over a nonresident defendant is a legal question, we review de novo a trial court's decision to grant or deny a special appearance. *See State v. Volkswagen Aktiengesellschaft*, 669 S.W.3d 399, 413 (Tex. 2023); *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 805–06 (Tex. 2002). When, as here, the trial court does not issue findings of fact and conclusions of law, we presume that all factual disputes were resolved in favor of the trial court's decision unless they are challenged on appeal. *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021).

A Texas court may exercise personal jurisdiction over a nonresident if "(1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *see also* Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041–.045. The Texas long-arm statute broadly permits jurisdiction over a nonresident doing "business in this state" if the nonresident "contracts . . . with a Texas resident and either party is to perform the contract in

whole or in part in [Texas]" or "commits a tort in whole or in part in [Texas]." Tex. Civ. Prac. & Rem. Code Ann. § 17.042(1), (2). But this list is not exclusive, and the statute's "broad language extends Texas courts' personal jurisdiction 'as far as the federal constitutional requirements of due process will permit.'" *BMC Software Belg. N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002) (quoting *U-Anchor Advert., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977)).

In determining whether federal-due-process requirements have been met, we rely on precedent from the United States Supreme Court and other federal courts, as well as Texas state-court decisions. *BMC Software*, 83 S.W.3d at 795; *TravelJungle v. Am. Airlines, Inc.*, 212 S.W.3d 841, 845–46 (Tex. App.—Fort Worth 2006, no pet.). Federal due process is satisfied when (1) the defendant has established minimum contacts with the state and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413, 137 S. Ct. 1549, 1558 (2017); *TV Azteca v. Ruiz*, 490 S.W.3d 29, 36 (Tex. 2016).

A defendant establishes minimum contacts with a state when it "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240 (1958)). Three principles govern our purposeful-availment analysis: (1) only the defendant's contacts with Texas are relevant, not the unilateral activity of another party or third persons; (2) the defendant's acts must be purposeful

8

and not random, isolated, or fortuitous; and (3) the defendant must seek some benefit, advantage, or profit by availing itself of Texas's jurisdiction so that it impliedly consents to suit here. *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 886 (Tex. 2017) (citing *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005)). "The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Retamco*, 278 S.W.3d at 338 (quoting *Am. Type Culture Collection*, 83 S.W.3d at 806).

A defendant's contacts can give rise to general or specific jurisdiction, *see Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013), but Primoris did not rely on general jurisdiction in the trial court and does not argue it on appeal. Accordingly, we need address only the parties' specific jurisdiction arguments. Specific jurisdiction exists when the cause of action arises from or is related to a defendant's purposeful activities in the state. *Id.* "For a Texas court to exercise specific jurisdiction over a defendant, '(1) the defendant's contact with Texas must be purposeful, and (2) the cause of action must arise from those contacts.'" *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 559 (Tex. 2018) (quoting *Michiana*, 168 S.W.3d at 795). When analyzing specific jurisdiction, our focus is on the relationship among Texas, the defendant, and the litigation. *Moncrief Oil*, 414 S.W.3d at 150.

**B. The parties' shifting burdens of proof**

The plaintiff and the defendant bear shifting burdens of proof in a challenge to personal jurisdiction. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). The plaintiff must first plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute. *Id.* "To determine whether the plaintiff satisfied its pleading burden and to determine the basis for jurisdiction alleged by the plaintiff, a court considers the allegations in the plaintiff's petition as well as those in its response to the defendant's special appearance." *Graves v. DJO, LLC*, 636 S.W.3d 321, 325 (Tex. App.—Fort Worth 2021, pet. denied) (op. on reh'g) (citing *Am. Refrigeration Co. v. Tranter, Inc.*, No. 02-15-00265-CV, 2016 WL 5957018, at *3 (Tex. App.—Fort Worth Oct. 13, 2016, no pet.) (mem. op.)).

Once the plaintiff has met this burden, the burden generally shifts to the defendant to negate all alleged bases of personal jurisdiction. *Id.* A defendant can negate jurisdiction on either a legal or factual basis:

> Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations. The plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction. Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction.

*Kelly*, 301 S.W.3d at 659 (footnotes omitted).

**C. Analysis**

On appeal, Telcon does not dispute that Primoris met its initial pleading burden. Instead, Telcon raises a legal challenge to jurisdiction. *See id.* Telcon "asserts that even if the jurisdictional facts alleged by Primoris are true, Telcon is not subject to personal jurisdiction in Texas because [(1)] the alleged contacts are not sufficient to constitute purposeful availment[]" and (2) the trial court's exercise of jurisdiction over Telcon "would not comport with traditional notions of fair play and substantial justice." Because Telcon does not challenge the sufficiency of Primoris's personal-jurisdiction allegations, we need only consider whether Telcon met its burden to negate the alleged bases of personal jurisdiction. *See Kelly*, 301 S.W.3d at 658; *Garcia v. Flores*, No. 13-17-00512-CV, 2019 WL 4678431, at *2 (Tex. App.—Corpus Christi–Edinburg Sept. 26, 2019, no pet.) (mem. op.).

**1. The special-appearance evidence**

### a. *Primoris's evidence*

According to Primoris's evidence, Telcon is registered to do business in Texas and has two Texas employees. Primoris and QLoop are both based in Texas.

Telcon—on behalf of QLoop—prepared certain specifications for Project Sage, delineating various duties and responsibilities. The specifications included specific representations regarding Telcon's obligation to obtain necessary permits and access agreements: "All DOT, County, City, Federal permits, and private easements

11

shall be obtained by TELCON with the Contractor listed as performing the work. All private easements access will be coordinated through TELCON. . . . "

Primoris worked on a bid to obtain the Master Agreement for Project Sage, and Telcon communicated with and advised Primoris about its bid, which Primoris eventually submitted to QLoop.[2] In the spring of 2022, Telcon's President Ronald Ivie and other Telcon representatives traveled to Texas for a multi-day meeting with Primoris "to do a demonstration or proof of concept for how Primoris could perform various aspects of the job." This meeting occurred at Primoris's facility in Texas.

On July 1, 2022, Primoris and QLoop signed the Master Agreement for QLoop's Project Sage. Under the Master Agreement, QLoop designated Telcon as its "Owner's Representative." As QLoop's representative, Telcon was required to process payment applications and proposed change orders for QLoop and to inspect all work. Telcon inspected, directed, and supervised Primoris's work and approved Primoris's payment requests that QLoop then paid. Telcon represented itself as, and acted as, QLoop's agent for the Master Agreement. Most of Primoris's interactions with QLoop were through Telcon.

---

[2]Citing to the unsworn declaration of Scott Comley, Primoris's President of Communications, Primoris argues that Telcon sent a request for proposal to Primoris, to which Primoris responded. But as Telcon points out, Comley's declaration does not expressly state who sent the request for proposal: "This includes Primoris submitting its bid in response to the Project Sage Request for Proposal . . . to Telcon." We agree that Primoris did not present evidence that Telcon sent the request for proposal to Primoris.

Comley and Anthony Jones, Primoris's President and Vice President of Communications, respectively, both averred that Telcon sent hundreds, if not thousands, of emails to Primoris and QLoop—Texas companies—and to their employees, who are based in Texas. Comley and Jones also stated that Telcon conducted hundreds of phone calls and daily meetings with Primoris and QLoop through their Texas-based employees.

In addition, Comley and Jones specifically averred that included among Telcon's communications to the Texas entities was "the representation that Telcon had the necessary access agreements and that Primoris, and its subcontractor Legend, were approved to begin performing under the [Master Agreement,] which required access agreements beforehand." According to Comley and Jones, Telcon's representatives were aware that Primoris was based in Texas.

### b. Telcon's evidence

According to Telcon's evidence, Telcon is an Idaho LLC, and its LLC agreement is governed by Idaho law. Telcon did not maintain a place of business in Texas; did not conduct regular business in Texas; and did not own, lease, or possess any real property in Texas. Telcon did not maintain any books or records, hold meetings of its directors or shareholders, or carry out any other internal affairs activities in Texas.

Telcon had only one member, who resided in Idaho. Telcon averred that it had only one employee who was a Texas resident but who worked remotely from Austin,

13

Texas, on a Canadian project that was unrelated to Project Sage and never worked on Project Sage.

Telcon's President Ivie stated that Primoris's claims against Telcon were based on allegedly fraudulent or negligent statements Telcon made to the Texas entities regarding Project Sage, a project that was to be performed and which occurred in Maryland and Virginia, and Ivie declared that none of the project's activities took place in Texas. Concerning Primoris's claims against Telcon, Ivie said that Telcon did not make any of the allegedly fraudulent or negligent statements in Texas and did not conduct any activities related to Primoris or the project in Texas.

In a declaration filed after Primoris pointed out Ivie's travel to Texas, Ivie admitted that he came to Texas once to meet with Primoris to discuss how it would install conduit for Project Sage if Primoris were selected to work on the project. Ivie averred that the meeting had occurred before Primoris and QLoop executed the Master Agreement, which was not negotiated at that meeting. He also declared that Telcon was not a party to the Master Agreement, which contemplated that all work to be performed under the agreement would take place in Virginia and Maryland—not Texas.

Ivie explained that Telcon was in Idaho, Maryland, Virginia, or elsewhere outside Texas during any alleged discussions with Primoris about Project Sage. In responding to Primoris's allegations and evidence about the number of emails and other communications between Telcon and Primoris, Ivie contended that Telcon's

14

daily meetings relating to Project Sage either occurred remotely or in Virginia or Maryland, that none of the daily meetings took place in Texas, and that none of the work discussed in those meetings took place in Texas.

### 2. Specific jurisdiction

Ordinarily we consider the trial court's exercise of specific jurisdiction on a claim-by-claim basis, but because Primoris's third-party claims against Telcon (for fraudulent misrepresentation, fraud by nondisclosure, negligent misrepresentation, and promissory estoppel) all arise from the same alleged forum contacts, we consider the claims together. *See M & F Worldwide*, 512 S.W.3d at 886 (citing *Moncrief Oil*, 414 S.W.3d at 150).

"For [over] half a century, the touchstone of jurisdictional due process has been 'purposeful availment.'" *Michiana*, 168 S.W.3d at 784. Telcon asserts that it did not purposefully avail itself of the privilege of conducting business in Texas and that Primoris's claims are not substantially connected with Texas.

Primoris responds with overarching "but for" arguments:

- "But for Telcon's purposeful contract with QLoop (a Texas entity), Telcon would not have acted as QLoop's owner's representative tasked with the responsibility of obtaining access for Primoris's work on Project Sage."

- "But for Telcon's purposeful negotiations with Primoris (a Texas entity), Primoris would not have won the bid for the Project Sage work."

- "But for Telcon's team meeting with Primoris at its facility in Mesquite, Texas, Primoris would not have had the information it needed to perform its work on Project Sage."

15

- "But for Telcon's representations made over the course of hundreds of communications initiated by Telcon and directed to Texas that access agreements were in place, Primoris would not have commenced work with Legend that stranded their equipment."

Such sweeping "but-for causation" arguments are insufficient to establish specific jurisdiction. *See Hilton Franchise Holding LLC*, 2024 WL 4899032, at \*8 (first citing *Moncrief Oil*, 414 S.W.3d at 157 (holding that "but-for causation alone is insufficient" to establish specific jurisdiction); then citing *Michel v. Rocket Eng'g Corp.*, 45 S.W.3d 658, 671 (Tex. App.—Fort Worth 2001, no pet.)).

Telcon argues that all the work for the underlying fiber-optic infrastructure project occurred in Virginia and Maryland and that Maryland was the location of the underlying landowner dispute at the heart of Primoris's claims against Telcon—that is, whether Telcon failed to obtain an access agreement with Maryland landowners and then misrepresented to Primoris either affirmatively that it had obtained the requisite Maryland-based access agreement or through nondisclosure when it had not, causing the work stoppage in Maryland.

Conceptually, "it is difficult to see how a failure to act could meet the purposeful availment requirement needed to establish personal jurisdiction." *Brocail v. Anderson*, 132 S.W.3d 552, 564 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (quoting *Anderson v. Bechtle*, No. 01-00-00593-CV, 2001 WL 930205, at \* 2 (Tex. App.—Houston [1st Dist.] Aug. 16, 2001, no pet.) (not designated for publication)).

16

"By its very nature, failure to disclose [or to act] demonstrates that a party did not have contacts with the forum state." *Id.*

Likewise, that Telcon allegedly affirmatively directed a tort to Primoris in Texas cannot, by itself, establish personal jurisdiction. *See Old Republic Nat'l Title Ins. Co.*, 549 S.W.3d at 560–61; *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 68–70 (Tex. 2016) ("The *Michiana* court thus expressly rejected the 'direct-a-tort' theory from the jurisprudence surrounding specific jurisdiction."). Rather, our core focus is on whether Telcon's conduct and connection to Texas were such that it could reasonably anticipate being haled into court in Texas. *See Moncrief Oil*, 414 S.W.3d at 152. To that end, we examine the relationship among Telcon, Texas, and Primoris's claims against Telcon. *See Walden v. Fiore*, 571 U.S. 277, 291, 134 S. Ct. 1115, 1126 (2014). We "look[] to [Telcon's] contacts with [Texas] itself, not [its] contacts with persons who reside there." *Id.* at 285, 134 S. Ct. at 1122.

### a. *No jurisdiction existed over Telcon simply because it registered to do business in Texas or had two Texas employees.*

Primoris argued that Telcon registered to do business in Texas and—based on an internet search from LinkedIn—alleged that Telcon had two employees in Texas. Telcon responded that it had only one Texas-based employee, who never worked on Project Sage.

But no matter the number, Primoris presented no evidence to the trial court that any alleged Telcon Texas employee ever worked on Project Sage, was involved in

17

obtaining the requisite access agreement in Maryland, or ever communicated with Primoris. Neither Telcon's registering to do business in Texas nor its having Texas-based employees was enough to establish specific jurisdiction over Telcon when these facts had no connection to Primoris's causes of action against Telcon. *See EnerQuest Oil & Gas, L.L.C. v. Antero Res. Corp.*, No. 02-18-00178-CV, 2019 WL 1583921, at *5 (Tex. App.—Fort Worth Apr. 11, 2019, pet. dism'd) (mem. op. on reh'g) (rejecting as a basis for specific jurisdiction the jurisdictional fact that a party registered to do business in Texas); *Baywater Drilling, LLC v. Ratliff*, No. 01-19-00706-CV, 2020 WL 3422207, at *7 (Tex. App.—Houston [1st Dist.] June 23, 2020, no pet.) (mem. op.) ("Because only a defendant's suit-related conduct is relevant to our specific-jurisdiction analysis, Baywater's general hiring practices do not establish the required minimum contacts.").

### b. Telcon did not contractually agree to litigate Primoris's tort claims in Texas.

In support of its argument that Telcon had minimum contacts with Texas, Primoris points out that Telcon served as the owner's representative for QLoop under the Master Agreement, which contained a Texas forum-selection clause. But Telcon was merely named in and was undisputedly not a party to that agreement. Moreover, the Master Agreement expressly disclaimed creating any third-party beneficiaries.

18

As a nonsignatory, Telcon asserts that it could not be bound to the Master Agreement's forum-selection clause. The Texas Supreme Court has stated that "[a]s a general proposition, a forum-selection clause may be enforced only by and against a party to the agreement containing the clause." *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 443 (Tex. 2017). Rarely will a nonsignatory be bound to a contract's forum-selection clause, and not under the circumstances presented by this case. *See id.* We agree that the trial court could not have exercised specific jurisdiction over Telcon by virtue of the Master Agreement's forum-selection clause.

Primoris not only attempts to argue Telcon's minimum contacts with Texas via the 2022 Master Agreement but also directs us to two other contracts involving Telcon that contained Texas-based forum-selection clauses. One contract, formed in 2021, involved a joint venture (an LLC composed of Telcon and another entity) that agreed to provide infrastructure planning, engineering, and procurement and construction management to Quantum Loophole, Inc. for Project Sage.[3] The second contract, also formed in 2021, was a master service agreement between Telcon and Ameredev Operating, LLC.

In addition to the fact that Telcon was a party only to the second of these two contracts and that Primoris's tort claims against Telcon were unconnected to either contract, Primoris was not a party to either contract. Primoris thus cannot bootstrap

---

[3]According to Primoris, Quantum Loophole, Inc. is QLoop, LLC's manager

19

either contract's forum-selection clause against Telcon into Primoris's present dispute against Telcon. *See id.*

In sum, none of the three contracts Primoris points to impacts our jurisdictional analysis because Primoris did not connect them to its tort claims against Telcon, and none evinced Telcon's agreement with Primoris to litigate Primoris's underlying tort claims against Telcon in Texas.

### c. *Telcon's sole Texas meeting was not substantially connected to Primoris's tort claims.*

Primoris asserts as another jurisdictional fact that Telcon sent a team to meet at Primoris's Texas facility.[4] Comley's averments about the meeting were somewhat vague, but he generally alleged that a team of Telcon representatives traveled to Texas for a multiday meeting with Primoris "to do a demonstration or proof of concept for how Primoris would perform various aspects of the job."

Ivie's unsworn declaration explained that this meeting had taken place before Primoris had signed the Master Agreement and that the meeting had concerned "how Primoris would install conduit for the project in Virginia and Maryland if Primoris were selected." Ivie explained that he had traveled to Virginia or Maryland for in-person meetings and otherwise communicated remotely from Idaho about Project

---

[4]Although Primoris's brief characterizes Telcon as having "organized" the Texas meeting, the record does not indicate who organized the meeting, as Telcon notes. Because, as we discuss, the record does not show that Telcon's sole in-Texas meeting was in any way connected to Primoris's tort claims against Telcon, the question of who organized the meeting is largely irrelevant.

Sage. Primoris offered no evidence that anything specifically undergirding or somehow relating to its tort claims—such as whether Telcon would obtain the Maryland access agreement at issue if Primoris were to eventually enter into the agreement with QLoop—was discussed at the one Texas meeting.

On this record, we conclude no evidence substantially connected Telcon's attendance at the Texas meeting—again, predating the Master Agreement—and the operative facts of Primoris's tort claims against Telcon—that is, whether Telcon later mispresented facts about obtaining an agreement to access the Maryland property involved in the work stoppage. *Compare Ascend Nat'l, LLC v. Ludders*, No. 14-20-00396-CV, 2022 WL 553123, at *6 (Tex. App.—Houston [14th Dist.] Feb. 24, 2022, no pet.) (mem. op.) ("[T]he [in-Texas] meeting cannot be a jurisdictional contact for purposes of the fraud claim because there is no allegation or evidence establishing that Ludders made the alleged misrepresentation during that meeting."), *and Fried, Frank, Harris, Shriver & Jacobson LLP v. Millennium Chems. Inc.*, No. 05-16-01132-CV, 2017 WL 3276010, at *8–10 (Tex. App.—Dallas July 31, 2017, pet. denied) (mem. op.) (involving a single in-Texas meeting unrelated to the plaintiff's claim), *with Max Protetch, Inc. v. Herrin*, 340 S.W.3d 878, 887–88 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (concluding that specific jurisdiction existed over a nonresident defendant who sold a custom-made table to a Texas resident, attended a single meeting in Texas to specifically discuss the table, and was sued for misrepresentations allegedly made during that meeting). Accordingly, Telcon's representatives' attendance

at the sole meeting in Texas did not constitute a contact supporting specific jurisdiction.

### d. *Telcon's work and communications with Texas entities about Project Sage did not establish sufficient minimum contacts with Texas concerning Primoris's tort claims against Telcon.*

Primoris argues that Telcon purposefully entered contracts with Texas entities that created "the duties Telcon performed for QLoop." According to Primoris, Telcon prepared the specifications for the Master Agreement, which required Telcon to obtain access to the job site—in Maryland and Virginia—through private easements. Notably, Primoris acknowledges that it has not sued Telcon for breach of any agreement requiring Telcon to obtain the land access at issue. But the fact that Telcon performed work for or even contracted with Texas entities concerning the fiber-optic infrastructure project occurring in Maryland and Virginia does not reflect that Telcon purposely availed itself of the privilege of conducting activities in Texas or that it intended to avail itself of the Texas market. *See Searcy*, 496 S.W.3d at 74–75 (holding that a Canadian entity that communicated with a Bermudian entity through its shareholder's Texas employees about purchasing assets that held Colombian oil and gas properties was not subject to jurisdiction in Texas); *Alpine Ocean Seismic Survey, Inc. v. Moore*, No. 14-19-00499-CV, 2021 WL 2325097, at *6 (Tex. App.—Houston [14th Dist.] June 8, 2021, no pet.) (mem. op.) (holding no specific jurisdiction in Texas over a nonresident defendant that contracted for a Texas-based consultant to inspect a research vessel in Maryland on which the plaintiff (a Louisiana

22

resident) was injured); *see also Pappie v. Batra*, No. 14-21-00290-CV, 2022 WL 1671100, at *7 (Tex. App.—Houston [14th Dist.] May 26, 2022, no pet.) (mem. op.) ("Even a sustained contractual relationship with a Texas resident does not support the exercise of jurisdiction if the contract is centered around the nonresident's operations outside Texas."); *EnerQuest Oil & Gas, L.L.C.*, 2019 WL 1583921, at *6 ("Merely contracting with a Texas resident does not satisfy the minimum contacts requirement." (cleaned up)).

Primoris also argues that during Telcon's work on Project Sage, "Telcon initiated hundreds, if not thousands, of communications over several years with Texas entities, including communicating to Primoris in Texas that Telcon had obtained the necessary access agreements and work could continue (which could only occur if agreements were obtained)." In its declarations, Primoris offered identical statements by Comley and Jones that "[t]he aforementioned communications include the representation that Telcon had the necessary access agreements and that Primoris, and its subcontractor Legend, were approved to begin performing under the [Master Agreement,] which required access agreements beforehand."

On the issue of remote communications received in Texas, we have previously observed that "[a]lthough the supreme court has disapproved 'opinions holding that . . . specific jurisdiction is *necessarily* established by allegations or evidence that a nonresident committed a tort in a telephone call from a Texas number,' *Michiana*, 168 S.W.3d at 791–92 (emphasis added), it has not held that telephone calls are never

23

sufficient to establish minimum contacts." *Glencoe Capital Partners II, L.P. v. Gernsbacher*, 269 S.W.3d 157, 165 (Tex. App.—Fort Worth 2008, no pet.). Logically, the same is true for other forms of electronic communication—such as emails.

Yet technological changes have rendered remote electronic communications (such as phone calls and emails) somewhat obsolete as proof of purposeful availment, so "we look to the quality and nature of the communications to establish purposeful availment." *Old Republic Nat'l Title Ins. Co.*, 549 S.W.3d at 560 (citing *Searcy*, 496 S.W.3d at 74); *see also EnerQuest Oil & Gas, L.L.C.*, 2019 WL 1583921, at 7 (questioning "the very premise of the contention that an e-mail can be sent to a particular state"). Indeed, if we were to look solely at whether a nonresident had remotely communicated with a Texas resident based on phone calls, emails, or similar forms of remote communication, we question how a nonresident would purposefully avail itself of any jurisdiction—including Texas—when a recipient could forward its calls or travel with its mobile phone or computer. *See Bryan v. Gordon*, 384 S.W.3d 908, 917 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Specific jurisdiction does not turn on where the recipient of a phone call or email happens to be. *See Searcy*, 496 S.W.3d 70. Rather, "[t]he proper question is . . . whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290, 134 S. Ct. at 1125.

Primoris heavily relies on our decision in *Glencoe Capital*, in which we held that specific jurisdiction existed over nonresidents' alleged misrepresentations made during

numerous telephonic board meetings with Texas residents. 269 S.W.3d at 164–65. But key to our decision was that the nonresidents were seeking business from Texas residents. *Id.* at 165 (contrasting *Michiana*, in which the seller did not advertise or otherwise seek business from Texas residents). Unlike the evidence offered in *Glencoe Capital*, Primoris offered no evidence that Telcon purposefully availed itself of the privilege of conducting business in Texas as contrasted with its simply communicating with Texas entities through their Texas-based employees about an out-of-state fiber-optic infrastructure project.

As Telcon argues, *Glencoe Capital* and the other communications-based-contact cases Primoris cites in its brief—in which courts have concluded that jurisdiction was proper over a nonresident—all involved nonresidents communicating with Texas residents about activities and business in Texas; none involved communications about property, projects, or business operations located in another state.[5] Unlike Primoris's

---

[5]*See Keller v. Keller*, No. 03-21-00309-CV, 2023 WL 2169490, at *3–4 (Tex. App.—Austin Feb. 23, 2023, no pet.) (mem. op.) (involving a requested protective order against a nonresident who had harassed a Texas resident); *Berger v. ToCo Holdings, LLC*, No. 14-20-00686-CV, 2022 WL 3268142, at *7 (Tex. App.—Houston [14th Dist.] 2022, no pet.) (mem. op.) (involving a defendant, acting for a Texas-based company, who had made misrepresentations to Texas residents); *Chen v. Razberi Techs., Inc.*, No. 05-19-01551-CV, 2022 WL 16757346, at *8 (Tex. App.—Dallas Nov. 8, 2022, pet. denied) (mem. op.) (concerning investors in a Texas-based company who made misrepresentations to induce others to invest in the company); *Bunting v. Kyle Bunting Holdings, Inc.*, No. 03-18-00656-CV, 2019 WL 2622318, at *4 (Tex. App.—Austin June 27, 2019, pet. denied) (mem. op.) (involving allegedly tortious phone calls and emails against a Texas resident); *Touradji v. Beach Capital P'ship, L.P.*, 316 S.W.3d 15, 30–32 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (involving a nonresident defendant who had served as a manager of a Texas entity that conducted business in

cited cases, the evidence before the trial court showed that Telcon's remote communications with Primoris concerned the Maryland- and Virginia-centric infrastructure project and that the alleged tortious conduct concerned and arose from whether Telcon had obtained an access agreement with Maryland landowners. Primoris presented no evidence to the trial court that Telcon was conducting any business operations in Texas; was trying to avail itself of the Texas market; or made any alleged misrepresentations about Texas landowners, a Texas project, or Texas-based business operations.

We therefore agree that the alleged emails, phone calls, and remote meetings between Telcon and Primoris about the out-of-state infrastructure project were legally insufficient to establish specific jurisdiction over Telcon in Texas. *See Searcy*, 496 S.W.3d at 68 ("The happenstance of a plaintiff's connection to Texas, then, will not alone suffice to confer specific jurisdiction over a defendant who merely deals with a Texas resident during the course of some unrelated endeavor."). Nothing else

Texas, including selling Texas real property); *Zhang v. Med-Towel Enters., Ltd.*, No. 03-09-00457-CV, 2010 WL 1404613, at *5 (Tex. App.—Austin April 8, 2010, pet. denied) (mem. op.) (stating that the nonresident's communications with a Texas business were made to conduct business in Texas for the nonresident's benefit); *TexVa, Inc. v. Boone*, 300 S.W.3d 879, 889 (Tex. App.—Dallas 2009, pet. denied) (involving nonresident defendants who formed an ongoing business relationship with Texas residents and formed and served as officers and directors of a Texas corporation that had suppliers and customers in Texas); *Lewis v. Indian Springs Land Corp.*, 175 S.W.3d 906, 916 (Tex. App.—Dallas 2005, no pet.) (concerning a defendant who had multiple contacts with Texas to manage his Texas-based businesses); *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 491–92 (5th Cir. 2018) (involving an auction house calling a Texas resident to discuss auctioning items located in Texas.).

26

in the record shows that Telcon had any purposeful, non-isolated contacts with Texas or that it sought some benefit, advantage, or profit from Texas.[6] *See M & F Worldwide Corp.*, 512 S.W.3d at 886.

Because Primoris failed to demonstrate that Telcon purposefully availed itself of the privilege of conducting activities in Texas, we cannot conclude that Telcon was subject to the trial court's exercise of specific jurisdiction. *See Luciano*, 625 S.W.3d at 8. Accordingly, the trial court erred by denying Telcon's special appearance, and we sustain Telcon's sole issue.

### 3. Fair play and substantial justice

We have concluded that sufficient minimum contacts were not present for a Texas court to assert personal jurisdiction over Telcon. Thus, we need not address whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. *See Est. of Hood*, No. 02-16-00036-CV, 2016 WL 6803186, at *7 (Tex. App.—Fort Worth Nov. 17, 2016, no pet.) (mem. op.). *See generally* Tex. R. App. P. 47.1.

---

[6]Primoris argues that Telcon did not challenge whether Telcon sought a benefit, advantage, or profit through its contacts with Texas. But Telcon did raise the issue—on the first page of its brief: "In sending those communications [that is, communications with people in Texas about a project that took place more than a thousand miles away], Telcon was not seeking to avail itself of the benefits of Texas law."

## III. Conclusion

Having sustained Telcon's sole issue, we reverse the trial court's order denying Telcon's special appearance and render judgment dismissing Primoris's third-party claims against Telcon for want of personal jurisdiction.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: February 20, 2025